Mueller v. Tippett. Counsel, whenever you're ready, you may proceed. May it please the court, opposing counsel, I'm Lawrence Taladiena. I'm here for the appellants. Donald Bardak, one of the appellants, is here individually to witness the argument. I'm glad that I could get this case in front of the appellate court because recently I've had more than one case where people are coming to a court asking to expand an existing written easement because they no longer feel that it meets their needs. This is one. I have another one that is not going to make it to this court. But I presented what I thought the law was and the court indicated, well, I want to hear all the facts in ruling on this. I do want to emphasize that we're talking about an express written easement here. We're not talking about one by prescription. We're not talking about anything by implication. Illinois law is very clear that when one interprets an easement, one looks to the terms of the grant. That is the relevant inquiry. Unlike prescriptive easement, you don't necessarily look back at how people have used it before or its existence before. It might come in handy if there is some kind of ambiguity where some statement is unclear. But in terms of an express easement, one looks to the document. Here the easement was won over an existing roadway. Express easements are construed strictly. One doesn't put anything in by implication. A good example of this is one of the cases cited in Apple East Street, McMahon v. Hines, where the court determined that an easement over a driveway did not include the curb. Because the easement said specifically driveway. It did not include the curb. So one looks to the terms of the easement. I also want to emphasize that in this particular case, there was really no ambiguity. It's not like the court had difficulty or greater difficulty in determining the width of the roadway. And I'm talking about the roadway as if it always existed. What we're talking about here is the court decided to establish a buffer zone outside of the roadway. And it explicitly said, both in remarks on the record and in the order, that measured from the old roadway. And the court was able to determine where that was. There was to be a two-foot buffer on either side. So the court, by its own order, by its own remarks, made clear that there was no confusion as to where the old roadway was. It was establishing an extraneous buffer. Now, if you've had a chance to look at the briefs, you can see that there was some disputes over the use of a roadway. My client initially tried to put in a roadway. There was an agreement of sorts that the trial court held. There was no meeting of the minds, and therefore this new roadway, which was better than the existing one, really could not be enforced because the people did not want to use it. So there's been litigation over the use of the old roadway. But the court did say that one had to use the old roadway, that we couldn't make them use the new, better road. My client, to delineate where the old roadway was, put up a fence, part of which was barbed wire. My client testified it's the cheapest type of fence. It's legal there. There's no dispute that this was a legal fence under zoning laws. But the court expressed its concern that if someone veered off of the roadway, that there might be some type of problem. Under those circumstances, the court said it was going to protect any party coming off of the roadway and set two foot wide buffers on either side. Wasn't there something in the briefs about a certain type of emergency vehicles would have problems with that roadway also? There was testimony that certain vehicles might have to slow down. My recollection... I think like a box built type of ambulance or emergency vehicle making the curve or slow down in certain areas, I believe. There was a curve and there was testimony that they might have to slow down. It might impede the travel across that. I might add that to my way of thinking, that's not testimony that should be introduced in terms of interpreting an express easement. The easement is what it is. The court at that point should not be engaged in a weighing of the public factors or trying to determine what would be a good road for that area. I think the court was limited to enforcing the express easement. To the extent that there's any other theory that one might conjure up, that was not presented. What we had here was a suit to enforce an express easement. That happened in my other suit, too. We had people bringing in testimony on an express easement about, well, if we have this kind of truck or if we have that, there may be difficulty getting through. My recollection about emergency vehicles is that they can go pretty much wherever they need to go to. There might be some residual liability for any damage to surrounding areas. My recollection, I believe that actually an emergency vehicle could get down the road, but might have to slow down. I'm trying to get back to this. I could find no law that allowed the court to expand the existing roadway. The court is not interpreting the existing express easement. The court is not supposed to be trying to weigh the benefits and the burdens. That's not how property law works. There's a direct line. There's barriers set up by law so people know which property is theirs and which is not. I want to add that for something like this, three or four years ago, I thought I knew how to advise somebody coming into my office asking about an easement. What are my rights? What are the other side's rights? If there were a 10-foot easement, one would say, well, you can't block the 10-foot easement. They can use it. They're entitled to use it. There's nothing you can do to interfere with that. Off of that, it's your property. I am unsure how to advise people to the extent that there are some considerations that there are somehow conumbral rights to an easement. That if one goes outside of the easement, there may be additional rights that the dominant estate has. I don't know how to talk to people about that. I can't define it. There are no specific principles set out. The court here made the express statement that this buffer zone was two feet from the prior demarcation of the roadway. The court said this explicitly. We can find where the old roadway was, and that's not being appealed. Beyond that, we go an additional two feet. In case you want to look at the specific statement, it's a supplemental record, page 18. It's line 19. The court made it clear that it was going beyond that. There was no expression of what principles were being employed other than the court said that the judge didn't think he was increasing the burden by adding the two foot buffer zones on either side. I would submit that that's not a correct statement. Any property owner, if you just restrict their use of property by an additional X number of feet, would consider that the burden on their property has been increased. Is it a legitimate approach under existing law of easements that one can make the type of modifications that the trial court made in order to affect actual use of the easement as opposed to the concept of burdening the dominant owner? You know, the idea that it's like implied powers of the U.S. Constitution. In order to do X, Congress has the power to do A, B, and C in order to affect X. I'm unaware of any penumbral rights associated with an easement. I think contrary to that, courts are willing to enforce property rights. You have a right to use your property. As a matter of fact, the courts, absent some specific interest, try not to affect property rights. Here, the court, in essence, created its own regulations for the road. What I was going to say is the rules with respect to express easements is that they're construed strictly. And that's longstanding Illinois law. One burdens property the least amount possible. Here, the court went beyond the terms of the express easement. Like I said, the court made it clear that it was able to find out where the old road was. Now, I do want to add, the court made some reference to, well, you can't put landmines outside of a roadway so that if anybody veers off, they're destroyed. There are laws that talk about people that you can foresee trespassing or coming onto your property. And I would submit that to the extent anybody feels that something like this is going on, those can try to be utilized. Now, nothing like that was done here. There were no pleadings drafted with respect to enforcing rights off the express easement. The specific suit that we had was to enforce an express easement. And the trial court went beyond that. Now, the court's order doesn't limit your client's use of the buffer zone other than not putting up a fence. You could plant corn right up to the edge of the rock. Sure. Okay. And the plaintiff or appellee has no right to go on the buffer zone. Correct. Okay, it's all about these posts and the barbed wire. Well, I might add if you look at the order, there could be some question about things besides the post. My recollection is that there were some limitations on anything that might obstruct. So landscaping, even corn, does leave us at issue later on if someone says that that obstructs it. I mean, we were specifically told to remove the posts. But I don't believe the order was as broad as just remove the posts and then you'll be fine. It seemed like the court was guided by these emergency vehicles, whether it was a box-type ambulance or a fire truck or some type of emergency equipment that would break this zone where the gravel and making these turns, even made specific mention of the turns as opposed to the straightaways. Well, if you look at the court's comments, it seemed to go beyond the emergency. It questioned my client's motivation in putting up a legal fence. It said barbed wire caused more harm than other types of fence. Now, there was no question that barbed wire was legal there. It's not in violation of the zoning, but the court just didn't like that use of the area off the property. But once again, I can understand the attraction of trying to judge the use of a road and how do we improve it and how can we make it better for society, but that's not property law. We have an express easement for 10 feet. I'm sorry, it was an express easement for a roadway. My other case involved 10 feet. And then the court decided to go beyond that. And everybody who has a property line or everybody who has an easement, the Serbian estate, for instance, it's going to be difficult for me to advise them what they can and can't do off of that easement. If we start going down the road of their penumbral rights, you have to worry about the safety or the utility of the easement, even though you're off of your road. That does not provide predictability. It's hard to advise people on what they can do and what they can't do. And it makes my life, in one respect, it makes it more difficult because it's harder to determine exactly how it's going to be viewed. I make it easier because I'm going to be in court more. But that's my own selfish games there rather than society at large. So I can understand the temptation to enlarge things. But if you look at the specific document that the court was being asked to enforce, it was an express easement over an existing roadway. The court found where the existing roadway was and then said it was going to go two feet on either side. And Illinois law says that in interpreting an express easement, you look at the corners of the document. You don't look at the use being made of the easement or those types of things. You're enforcing a contract or a grant of property rights, which is governed by contract. So, if the court has any further questions. I don't believe so. Thank you, counsel. Thank you. Counsel. Good morning. I am Leo Thompson of Leaders, Robertson & Thompson of Granite City. I'm here on behalf of the plaintiff, who is the appellee in this case. You will notice that the briefs really don't apply. And the reason for that is the theory before this court is presented by the appellants in one way and by me in another. The question that is really here is what is the measure or the philosophy or the principle the court is to apply to determine whether or not the order of the trial court should be reviewed. It is the position of the appellant that it is a matter of law because it is a strict interpretation of the easement language. If you read the brief that I have presented for the appellee, it is just the opposite. It is the manifest weight of the evidence. The appeal that is here today is nothing but a question of fact. The defendant had blocked the road and had removed at least 60% of the surface of the road. It was ordered to restore the road, and when they asked the court to approve what they had done, the trial court said, we haven't done that. So then the plaintiff announced, since they had the duty of maintenance of the road anyway as the dominant estate, said, we'll restore the road, the surface. The defendants then went out and marked with coal and barbed wire the path and the width that they thought should be the road as it existed. The whole evidence before this trial court was whether or not that was in fact the path. There is an S curve that is at the north end. At the south end is my client's property in which he has his home. The holes were placed there and had not been there by the defendant's own testimony for over 30 years. He put them there, they put them there, when they found out that the plaintiff was going to restore the rock surface as it had been ordered and permitted by the court. The trouble with that, the evidence shows that there's a dispute on the width of that pathway. The plaintiff Mueller testified that it was normally 12 feet wide from north to south. He testified that he has not been able to bring his camper through the old road because the S curve does not permit that kind of travel. Furthermore, any delivery truck to his home, like from Lowell's, could not travel through that. The emergency vehicle that has been mentioned by the court, he says they had to slow down. The testimony by the township supervisor was that he said that it would be great difficulty, I presume, at slowing down. But he would probably get there if an emergency arose some way or another. But it is something that had not existed before they put the holes. Even the defendant said it would probably be impossible for a large truck to get back through the S curve and back into the plaintiff's house. So the real issue here is not what is the wording of the easement. The court itself was a little bit concerned as to what it could find. So when it said it went to the site and it went to the site to take a look, he said, I'm not going to go out there to try to find the edge of the road. I'm going to go out there to find if those poles and barbed wire constitute an obstruction to the use of the right-of-way. He paid the visit, and he came back, and at that time, I think from the transcript you'll find that he was a little intense. Because he said he found that the poles and the barbed wire were put there for harm, not to mark the road. And therefore he felt there had to be a solution, and that was the factual matter that he had to deal with. What do I do to allow the reasonable use of the roadway and yet protect the rights of the Serbian state? Therefore, he said, the barbed wire goes. It was there for a purpose of harm. But you can put the poles alternately every six feet if you wish to mark it. But it will be off of the side of the old road, which he meant as that would have been rocked, because he couldn't and did not intend to try to determine what it was before. The plaintiffs, who are the Serbian owners, a dominant owner, have the right of reasonable use of this driveway to get to their home. And the conduct of the defendant from the beginning of this case through this last hearing, which is before this court, has been to restrict, to obstruct, and to prevent the use of the grant of easement, which is their only legal access to their property. Now, there is a new road, but there is no right of the plaintiff to use it unless the defendant permits it and says how you may use it. The old road, as it's referred to, was obstructed and still to this day prevents the use in order to have a normal access to the property of the plaintiff. The cases that I have cited show and state that this is a question of fact in order to honor the rights of both parties, the dominant and the Serbian tenants. And that, they say, is a question of fact which must be decided by the trial court and cannot be reversed unless it is against the manifest weight of the evidence. And it is not an issue as to whether or not there might have been another decision here. It's a question of whether there is any evidence in the record that will support the decision of this trial judge. Now, he was faced with a situation that he was trying to bring some kind of working relationship between these parties. And he felt that the best way to do it, based upon the fact that he was not going to determine what was the real edge of the easement, but what was necessary for a reasonable use by the plaintiffs across this property. That's what's before this court. Do they find that there is not enough evidence to support the plaintiff's position and the trial court's order? I say to this that there's more than enough evidence, more than enough that the roadway had been somehow torn up and questioned. And so the only way to resolve it was to say, if you want to mark it, here's how you're going to mark the road and take the barbed wire down because you had only purpose for that, just to harm people who traveled on that roadway. What's your position in addressing the thrust of appellant's argument that when you have not an implied easement but a written easement, the documents should be strictly construed? That's good law in Illinois. Good law in Illinois is that easement is to be interpreted strictly. There's no question about that. But also the application of that easement sometimes requires evidence, and that's what the court said in its order of December. The evidence showed that on the S-curve, which he stressed in the December order, cars do not bend, but the road did, and with the poles placed where they were, that interfered with and obstructed the use of the roadway. I don't disagree with those cases cited by the appellant in this case because it's all good law, but it's not the issue in this case here. That's where we differ, and that's why I said at the beginning, our briefs don't clash. We have two different paths that we bring to this case. Is there a factual dispute as to where the border or edge of the old roadway is? Oh, yes, sir. He says there's not. But the evidence was that Plankett's testified, as I said, Plankett Mueller said it's 12 feet wide. Evidence shows that at one point it's 9 1⁄2 feet. They also said that he could get his camper in there before without any problem. Now he cannot get his camper into his home. Okay, so he said 12 feet as to the borders of the old roadway, your client's position is, but on the S-curve or at some portion it retracts to 9 feet? Oh, yeah. Both the defendant and the plaintiff measured the pole. The narrowest is about 9 1⁄2, and there are pictures showing the width all along. So at one point it is 12, or close to it, but at one point it's down to 9 1⁄2. And that's in the S-curve? No, I think it's just south of the S-curve. South of the S-curve. Okay, that's right. So I asked this court to please uphold the trial court's decision. I realize that some of his comments were a reaction. It has been pointed out here by the appellant today that he was talking about you can't put bombs next to the S-tube. But when he returned and we had our first hearing after the site visit, he was a little bit intense. And the main issue is whether or not his order fits the situation and should be reviewed as a manifest way to the evidence or whether or not that is considered off the easement. And I say based upon the facts he was faced with, he chose the only way he knew to go to give a reasonable use of the road and yet not try to burden the subject of the state more than it would have to be. Thank you. Counsel? When counsel Frappoli tries to characterize this as somehow an evaluation of facts and the court came up with this order to interpret the existing facts, I have to disagree. The court found where the demarcation of the road was. It made its order with respect to the demarcation of the old road. There was no finding that this buffer zone that it created was somehow part and parcel of the express ramp. The court specifically ordered the buffer zone from the demarcation of the old road. The court expressly said it was providing a buffer zone from the old road. Nowhere in there did the court say, well, what I'm referring to, a buffer zone, was really part of the existing easement. What the court was trying to do was fashion its own road, which he thought would be adequate for the needs of the two landowners, which has some kind of gut appeal that it's not Illinois law. The court was tasked with enforcing an express easement. I've cited in there the court's rationale and the court's reasoning. Some of the statements that were alluded to were, I think, suppositions of what the court's reasoning was. I would ask the court to look at the actual hearing to see what the court said. But there was no finding or no statements that I recall or that I was able to find where the court drew this buffer zone out of the terms of the express easement. As a matter of fact, the court, by its order, and if you look at the express terms the court used, and also the elaboration of the order in the hearing, the court measures the buffer zone from the road. The court, by his own language, says that it was something that was going above and beyond the old road. So this is a legal interpretation that the court made. This is a determination that the court made that it had the power to go beyond the terms of the express easement to make whatever accommodation the court thought would be beneficial. That's the part that we have trouble with. I can't say it enough because we keep going off the point. We keep talking about the effect of enforcing the express easement and how it would work if we enforced the express easement. But at first, an easement by prescription was not before the court. There was no cause of action presented for easement by prescription. There were no other theories presented other than we need to enforce the express easement. The court, by its own language, made it clear from the prior roadway it was going out still further. As Mr. Tonson said, Illinois law is clear. When the court tried to accommodate the use of the road to what it thought would be a more beneficial use, it was going beyond existing Illinois law. And this was not something in interpreting the express grant easement. It was something above and beyond that. And the court's own language made it clear that that's what it was doing. And some of the statements that Mr. Tonson made about what the court was doing, I think are extrapolations of what it thought the reason was, not so much what the court said. Although the court does have the transcript. I've cited to it. If there's a question about it, thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement.